# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHEN OWENS,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **NO. 26-2486** |
| | : | |
| **OUR BROTHERS' PLACE, *et al.*,** | : | |
| *Defendants* | : | |

## M E M O R A N D U M

NITZA I. QUIÑONES ALEJANDRO, J.                                    MAY 18, 2026

Plaintiff Stephen Owens ("Owns") brings this *pro se* civil action against a homeless shelter, Our Brothers' Place, its director, and a supervisor who works there.  Owens seeks to proceed *in forma pauperis*.  For the reasons set forth, the Court will grant Owens *in forma pauperis* status and dismiss his Complaint, *in part*.

## I.       FACTUAL ALLEGATIONS

Owens, a current resident of Our Brothers' Place, describes himself as an individual with "physical disabilities that limit[] his everyday life activities such as walking, sitting or standing for short or long periods of time," and alleges he experiences chronic pain that "will not stop" until he receives back surgery.[1]  (*Id.* ¶¶ 11-12.)  He identifies Our Brothers' Place as a shelter that "receives state and federal funding to house, feed, clothe, provide safe haven and to accommodate those residents with physical disabilities."  (*Id.* ¶ 4 (cleaned up).)

On March 27, 2026, Owens was moved to the second floor of Our Brothers' Place "due to multiple physical disabilities that the first floor could not accommodate."  (*Id.* ¶ 7 (cleaned up).)

---

[1]      Owens also suffers from "mental disabilities" that do not appear to be relevant to his claims. (Compl. ¶ 3.)

Specifically, Owens has lymphedema in his legs, which requires him to prop his legs up when sleeping, and neuropathy in his feet, which causes tingling and numbness, and often causes him to fall in the shower. (*Id.* ¶¶ 19-20.) He alleges that the first-floor bathroom and shower at Our Brother's Place do not have rails that accommodate his physical needs, but that the second floor is so equipped. (*Id.* ¶¶ 16-17.)

On April 2, 2026, the director and a supervisor at Our Brothers' Place moved Owens to the first floor "due to having a plastic cup" even though he claims that he did not act in a way that was inconsistent with second floor policies. (*Id.* ¶ 18.) He claims that they authorized the move despite knowing about his disabilities. (*Id.* ¶ 22.) The move has caused Owens "severe pain" because his disabilities are not being accommodated. (*Id.* ¶¶ 22, 24-25.)

Owens also alleges that the shelter houses approximately 150 male residents "in the dining room/bedroom area"—which does not have windows to allow in fresh air—and that the cots provided are comprised of a metal bar and a thin mesh material that is made for military use. (*Id.* ¶¶ 8-9, 14.) The cots are too small for Owens and cannot accommodate his weight. (*Id.* ¶¶ 10-11.) Accordingly, he has to "either struggle with lifting himself" from the cot or to "roll over on his stomach while his knees are on the floor and push up on the cot in order to stand." (*Id.* ¶ 13.) Owens also alleges that there are rats, mice, and roaches in the area. (*Id.* ¶ 15.)

Based on the above allegations, Owens brings constitutional claims, pursuant to 42 U.S.C. § 1983, and claims under the Americans with Disabilities Act ("ADA"). (*Id.* ¶¶ 1, 26.) He seeks damages, an order directing the Defendants to restore his residence to the second floor, and an order directing the Defendants to "find beds for the 150 men." (*Id.* at 7-8.)

2

## II.    STANDARD OF REVIEW

The Court will grant Owens leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, because it appears that he does not have the ability to pre-pay the fees to commence this case.  Section 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  This standard requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At the screening stage, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Owens is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).  "While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the *pro se* litigant mentioned it be name,' this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support." *Doe v.*

3

*Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at \*3 (3d Cir. Feb. 1, 2024) (quoting *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

### III.   DISCUSSION

#### A.  Section 1983 Claims

The Court understands Owens to be bringing constitutional claims pursuant to § 1983 based on the conditions of the "dining room/bedroom area" where he is allegedly among the 150 men housed.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."  *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

Whether a defendant is acting under color of state law — *i.e.*, whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotation marks omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).  To support a finding of state action, "the government

must be 'responsible for the specific conduct of which the plaintiff complains.'"  *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Owens's Complaint is devoid of allegations from which the Court could conclude that Our Brothers' Place and its employees are state actors.  His sole allegation on this point is that Our Brothers' Place "receives state and federal funding." (Compl. ¶ 4.)  However, "[c]ourts analyzing § 1983 claims against privately run social services entities that operate housing programs and homeless shelters, as well as their employees, have consistently concluded that such defendants are not state actors."  *Dantley v. Bethesda Project, Our Brother's Place*, No. 26-1008, 2026 WL 824052, at *3 (E.D. Pa. Mar. 25, 2026) (collecting cases); *see also Bell v. SELF Inc.*, No. 23-3646, 2023 WL 7004419, at *4 (E.D. Pa. Oct. 24, 2023).  That is so even where the organization receives government funding.  *See Chance v. Reed*, 538 F. Supp. 2d 500, 507 (D. Conn. 2008) ("The mere fact that Operation Hope receives federal and state funding and is organized as a § 503(c)(3) nonprofit organization under the Internal Revenue Code does not make any of the defendants a state actor."); *see generally Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019) ("[T]he fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function.  The same principle applies if the government funds or subsidizes a private entity." (citations omitted)).  Since the Defendants are not state actors, the Court will dismiss Owens's § 1983 claims.

**B. ADA Claim**

Owens also brings a claim under the ADA predicated on his move from the second floor of Our Brothers' Place, where the bathrooms and showers are equipped with grab bars, to the first

floor, which allegedly does not have such accommodations.  Title III of the ADA prohibits places of public accommodation from discriminating against individuals with disabilities in connection with goods, services, facilities, privileges, advantages or accommodations.  *See* 42 U.S.C. § 12182(a).  To state a claim under this provision, a plaintiff must plausibly allege that:  (1) he has a disability; (2) the defendant is a public accommodation within the meaning of the statue; and (3) he was denied goods, services, facilities, privileges, advantages or accommodations due to discrimination based on his disability, which can include failure to reasonably accommodate his disability.  *See Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019); *Douris v. Dougherty*, 192 F. Supp. 2d 358, 368 (E.D. Pa. 2002).  To allege a disability under the ADA, a plaintiff must allege that he has "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), which can include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," *id.* at § 12101(2)(A).  Public accommodations include homeless shelters and other "social service center establishment[s]." *See* 42 U.S.C. § 12181(7)(K).

Owens alleges that his neuropathy causes tingling and numbness in his feet and often causes him to fall in the shower or while walking.  (Compl. ¶ 20.)  At this stage of the case, his allegations are sufficient to allege a disability because his condition affects his ability to stand and walk.  *See Badalamenti v. La. Dep't of Wildlife & Fisheries*, 439 F. Supp. 3d 801, 807 (E.D. La. 2020) (concluding that plaintiff who suffered from among other things, "neuropathy with nerve damage in both hands," alleged a disability).  He also adequately alleges that Our Brothers' Place is a shelter within the meaning of "public accommodation" as defined by the ADA.  *See* 42 U.S.C. § 12181(7)(K).  Additionally, the United States Court of Appeals for the Third Circuit has held

that "the provision of a shower is a service, program, or activity" within the meaning of the ADA. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 290 (3d Cir. 2019) (addressing the issue in the context of ADA Title II). Given Owens's allegations that he requires grab bars in the shower and bathroom to accommodate his neuropathy (or he is at risk of falling), and his allegation that he was moved from the second floor of Our Brothers' Place, which could accommodate his condition, to the first floor, which could not, he has alleged enough to proceed. However, the Court will dismiss the ADA claims against the individual Defendants, *see Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002); *Weiss v. Posner*, No. 24-9659, 2026 WL 674099, at *20 (D.N.J. Mar. 10, 2026), as well as any claims for damages, which are not permitted by the statute, 42 U.S.C. § 12188(a). This means Owens will not be able to recover any money and is instead limited solely to injunctive relief. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003) ("Title III defendants cannot be liable for money damages."); *Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023) ("Title III of the ADA, which prohibits discrimination on the basis of disability in public accommodations, only provides for injunctive relief." (citation omitted)).

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, the Court will grant Owens leave to proceed *in forma pauperis* and dismiss his claims with the exception of his ADA claim for injunctive relief against Our Brothers' Place. The Court concludes that it would be futile to allow amendment of the dismissed claims and will send Owens the required paperwork to proceed with service on his one remaining claim. An appropriate Order follows.

*Nitza I. Quiñones Alejandro, Judge*

*NITZA I. QUIÑONES ALEJANDRO, J.*